**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

| | | |
|---|---|---|
| MICHAEL J. BARZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. |
| | ) | |
| CITY OF CHICAGO; | ) | |
| LARRY SNELLING, individually | ) | |
| and in his official capacity; | ) | |
| JOY A. BROWN, individually | ) | |
| and in her official capacity., | ) | |
| SANDRA BLAKEMORE, individually | ) | |
| and in her official capacity; | ) | |
| Defendants. | ) | |

**COMPLAINT**

Now comes Plaintiff, MICHAEL J. BARZ, by and through his attorneys, MALATESTA LAW OFFICES LLC, and LAW OFFICES OF GARRIDO & STOPPA, P.C. and in complaining of the Defendants states as follows:

## I. JURISDICTION AND VENUE

1. This action arises under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

2. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

3. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over related Illinois law claims.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because all events giving rise to this action occurred in Chicago, Illinois.

1

## II. PARTIES

2. Plaintiff Michael J. Barz is a resident of Illinois and a retired CPD officer who served for nearly thirty years, achieving the rank of Commander and Deputy Chief, with zero sustained disciplinary findings in his career.

3. Defendant City of Chicago is a municipal corporation that operates CPD and is liable under Monell v. Dep't of Social Services, 436 U.S. 658 (1978), for the constitutional violations of its final policymakers.

4. Defendant Larry Snelling was, at all relevant times, Superintendent of CPD, possessing final policymaking authority over IFR designations and final approval authority over command-level suspensions. His signature constituted the final and determinative act of IFR designation.

5. Defendant Joy A. Brown was, at all relevant times, Director of Human Resources for OPSA, responsible for preparing IFR recommendation memoranda and maintaining personnel records.

6. Defendant Sandra Blakemore was, at all relevant times, Commissioner of DHR and, under the City's IFR Policy, the sole official with final and discretionary authority to adjudicate IFR removal requests.

7. At all relevant times, each Defendant acted under color of state law.

## GENERAL ALLEGATIONS

8. On April 24, 2025, Defendant Brown authored a memorandum to Defendant Snelling recommending Plaintiff's placement on the City's Ineligible for Rehire ("IFR") list, representing that two complaint register numbers — Log No. 2023-0005417 and Log No. 2025-0001373 — each carried sustained findings with 15-day suspension recommendations. Both representations were false. Log No. 2023-0005417 was closed UNFOUNDED on July 20, 2025. Log No. 2025-0001373 was administratively closed without investigation on April 30, 2025. No suspension was ever imposed on Plaintiff in his career.

9. On April 30, 2025, Snelling signed two OPSA documents on the same date: a credential determination form certifying Plaintiff was in Good Standing and eligible for retirement credentials; and the IFR memorandum placing Plaintiff on the IFR list as retiring in lieu of discharge for misconduct. These documents are irreconcilable. The following day, Brown signed a federal IROCC certification confirming Plaintiff retired in Good Standing.

10. On May 27, 2025, DHR classified Plaintiff's separation as "Retirement – In Lieu of Discharge," entering this classification into his personnel file and barring him from rehire within CPD. This classification was publicly disseminated through at least four FOIA responses to third parties and through media outlets, including after the City possessed the July 20, 2025 UNFOUNDED Closing Report.

2

11. On September 29, 2025, Plaintiff filed a formal removal appeal with DHR, submitting the UNFOUNDED Closing Report and his disciplinary history reflecting zero sustained findings. On November 13, 2025, Blakemore denied the appeal in a letter with no rationale and no reference to the UNFOUNDED finding. On April 15, 2026, following contact by Plaintiff's counsel, Blakemore reversed that denial and approved removal on no new evidence.

12. In April 2026, Brown acknowledged in writing that BIA had provided inaccurate information regarding Plaintiff's disciplinary status and formally requested reversal of the IFR designation.

## COUNT I

### Deprivation of Liberty Interest Without Due Process
### (42 U.S.C. § 1983 – Fourteenth Amendment )

13. Plaintiff realleges paragraphs 1–10 as if fully set forth herein.

14. The Fourteenth Amendment prohibits the government from publicly disseminating materially false and stigmatizing information in connection with the alteration of a person's legal employment status without providing due process. See, e.g., Hinkle v. White, 793 F.3d 764, 767 (7th Cir. 2015); Dupuy v. Samuels, 397 F.3d 493, 509–10 (7th Cir. 2005)

15. As Superintendent, Snelling possessed final policymaking authority for executive-level employment classifications including Ineligible for Rehire ("IFR") designations, and possessed final approval authority over suspensions imposed on command-level officers.

16. Superintendent Snelling's signature constituted the final and determinative act of IFR designation. On April 30, 2025, Snelling signed two separate OPSA documents concerning Plaintiff on the same date: a credential approval form certifying Plaintiff as a good-standing retiree eligible for a Retirement ID, Star, and IROCC license; and the IFR memorandum placing Plaintiff on the IFR list based on findings later acknowledged to be inaccurate

3

17. Defendants classified Plaintiff as retiring "In Lieu of Discharge," implying termination-level misconduct within the law enforcement profession. The classification was based on representations — certified sustained findings and 15-day suspension recommendations — that were not supported by final investigative findings. The BIA's Closing Report found Log No. 2023-0005417 Unfounded; Log No. 2025-0001373 was administratively closed without investigation; no sustained findings were formally adjudicated; no suspension was ever imposed.

18. Defendant Snelling signed a credential approval certifying good-standing eligibility on the same date he signed the IFR designation; Brown signed a federal good-standing certification the following day; CPD issued a retired officer ID and IROCC card reserved for good-standing retirees; and the City removed the designation after acknowledging the underlying information was inaccurate.

19. On April 24, 2025, Brown authored the IFR memorandum. On April 13, 2026, Brown authored a formal memorandum to Defendant Blakemore acknowledging that BIA had provided inaccurate information and formally requesting reversal of Plaintiff's IFR designation

20.The IFR designation barred Plaintiff from rehire within CPD, constituting an alteration of his legal employment status.

21. The City created the classification and entered it into official records. FOIA disclosures occurred on at least four documented occasions — August 2025, December 2025, and twice in March–April 2026 — including after the City possessed the unfounded Closing Report and after Blakemore's denial. The classification was additionally disseminated to media outlets traceable to CPD's production of the Brown memorandum.

22. The publication element is not defeated by the FOIA-compelled nature of the disclosures. The City created and maintained the classification in official records. Each FOIA release was a

4

foreseeable consequence of that affirmative governmental act. The City's continued maintenance of the record after possessing the unfounded Closing Report meant that subsequent FOIA releases conveyed information not supported by final investigative findings.

23. A liberty interest is implicated even after separation from public employment where the government imposes a stigmatizing classification that forecloses future employment opportunities.

24. Plaintiff's formal appeal requested a name-clearing hearing. Blakemore's November 2025 denial — containing no rationale, no reference to the unfounded Closing Report, and no citation to IFR Policy criteria — did not provide due consideration as the Policy requires.

25. The right not to be stigmatized and deprived of employment status without due process was clearly established at the relevant time. A reasonable official would have known that maintaining and disseminating a termination-level employment classification after official records showed the predicate findings were not final, not sustained, or later found unfounded required meaningful process before continued publication and maintenance of that classification.

26. Defendant Brown submitted the credential approval form certifying good-standing status and the IFR memorandum citing inaccurate findings to the same signatory on the same date; signed a federal good-standing certification the following day; declined to authorize credentials the next day; authored IFR declinations for two comparator officers with objectively worse records in the same period; maintained the classification for eleven months; and acknowledged in writing that the underlying information was inaccurate. These facts raise a reasonable inference of reckless disregard for the accuracy and constitutional consequences of the IFR designation.

27. Defendant Snelling signed a credential approval certifying good-standing eligibility and an IFR designation on the same date concerning the same officer. As the official with final approval

authority over command-level suspensions, Snelling was in a position to confirm whether any such suspension had been submitted. He personally intervened to protect a criminally arrested comparator officer and took no corrective action after the UNFOUNDED Closing Report. These facts raise a reasonable inference of reckless indifference to the accuracy and consequences of the IFR designation.

28. Plaintiff was entitled to a hearing related to any claims of misconduct and was never provided an opportunity to respond to the allegation.

**COUNT II**
**DEFAMATION**

29. Plaintiff realleges paragraphs 1–10 as if fully set forth herein.

30. That Plaintiff retired "In Lieu of Discharge" with sustained complaints and 15-day suspension recommendations. These statements were not supported by final investigative findings. The BIA Closing Report found Log No. 2023-0005417 UNFOUNDED. Log No. 2025-0001373 was administratively closed without investigation. No suspension was ever imposed.

31. Brown's April 13, 2026 memorandum acknowledges the underlying information was inaccurate.

32. After possessing the unfounded closing Report since July 2025, Defendants continued to publish the classification through FOIA disclosures to media outlets.

33. Defendants published statements through official records, FOIA disclosures, and documents disseminated to media outlets that they knew or should have no were false and inaccurate.

34. The published statements imputed professional misconduct and communicated that Plaintiff retired to avoid termination.

35.     The false information and inaccurate findings were published to the general public.

36      As a direct result of said publication the Plaintiff suffered damages; including but not limited to damage to his reputation and interruption to his ability to seek employment.

## V. DAMAGES

37. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered: reputational injury within the law enforcement community from media publications of false disciplinary information; loss of employment opportunities during eleven months of wrongful IFR designation; and loss of the professional dignity earned through nearly thirty years of decorated service; denial of retirement credentials on his last day of service; denial of his retirement star for nearly eleven months; and continuing harm from unresolved questions about the accuracy of his personnel record. These harms were a foreseeable consequence of Defendants' conduct and were directly caused by the acts alleged herein.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff MICHAEL J. BARZ respectfully requests that this Court:

A. Enter judgment in Plaintiff's favor on all counts;

B. Award compensatory damages in an amount to be determined by a jury;

C. Award punitive damages against Defendants Snelling, Brown, and Blakemore in their individual capacities pursuant to 42 U.S.C. § 1983;

D. Order declaratory relief that the IFR designation and "Retirement – In Lieu of Discharge" classification violated the Fourteenth Amendment and were not supported by final investigative findings;

E. Order injunctive relief requiring the City to correct Plaintiff's personnel record to reflect retirement in good standing and to ensure the false IFR memorandum is not produced in response to future FOIA requests;

F. Award reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988;

G. Award pre- and post-judgment interest; and

H. Grant such other relief as the Court deems just and proper.

Respectfully submitted,

_E/SJohn Garrido_

John Garrido
Attorney at Law
Law Offices of Garrido & Stoppa, P.C.
5310 N. Harlem, Suite 210
Chicago, IL 60656
773-594-2870 | 773-594-2871 fax
Counsel for Plaintiff Michael J. Barz

_E/S  Michael Malatesta_

Michael Malatesta
Attorney at Law
Malatesta Law Offices, LLC
5310 N. Harlem, Suite 203
Chicago, IL 60656
312-445-0514| 312-264-0650 fax
Counsel for Plaintiff Michael J. Barz