## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL J. BARZ, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:26-cv-04707 |
| | ) | |
| v. | ) | Judge Kennelly |
| | ) | |
| CITY OF CHICAGO; LARRY SNELLING; | ) | Magistrate Judge Jantz |
| JOY A. BROWN; and SANDRA | ) | |
| BLAKEMORE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES Plaintiff, Michael J. Barz, by and through his attorneys, Malatesta Law Offices, LLC, and the Law Offices of Garrido & Stoppa, P.C., and for his First Amended Complaint against Defendants City of Chicago, Larry Snelling, Joy A. Brown, and Sandra Blakemore, states as follows:

### I. NATURE OF THE ACTION

1. This is a civil rights action under 42 U.S.C. § 1983. Plaintiff Michael J. Barz, a retired Chicago Police Department ("CPD") command officer with nearly thirty years of service and no sustained disciplinary finding in his career, was placed on the City of Chicago's Ineligible for Rehire ("IFR") list and officially classified as having retired "in lieu of discharge" for misconduct. That classification was false. It rested on two complaint files that, under CPD's own mandatory rules, could not produce a valid finding: one was later closed as unfounded, and the other alleged conduct nearly sixteen years old and was closed without investigation. The City disseminated the false classification to third parties through responses under the Illinois Freedom of Information Act ("FOIA") and to news media, and denied Plaintiff any meaningful opportunity to clear his name. Plaintiff seeks damages and equitable relief correcting his record.

### II. JURISDICTION AND VENUE

2. This action arises under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.

3. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's related claims under Illinois law, which arise from the same case or controversy.

4.      Venue is proper under 28 U.S.C. § 1391(b) because all events giving rise to Plaintiff's claims occurred in this District.

**III. PARTIES**

5.      Plaintiff Michael J. Barz is an Illinois resident. He served CPD for nearly thirty years, rose to the rank of Commander, and served as a Deputy Chief. He was demoted from Commander to Captain on March 21, 2025, and retired on May 2, 2025 with no sustained disciplinary finding in his career.

6.      Defendant City of Chicago is an Illinois municipal corporation that operates CPD and the offices responsible for the acts alleged here. It is liable for constitutional deprivations caused by its own policies and by the acts of its final policymakers.

7.      Defendant Larry Snelling was at all relevant times the Superintendent of CPD. Under the City's policies, the Superintendent held final authority over IFR designations and final approval authority over command-level discipline. He is sued in his individual capacity.

8.      Defendant Joy A. Brown was at all relevant times the Director of Human Resources for the Office of Public Safety Administration ("OPSA"), responsible for preparing IFR recommendations and maintaining the related personnel records. She is sued in her individual capacity.

9.      Defendant Sandra Blakemore was at all relevant times the Commissioner of the Chicago Department of Human Resources ("DHR") and, under the City's IFR policies, the official with final authority to decide requests to remove an IFR designation. She is sued in her individual capacity.

10.     At all relevant times, each Defendant acted under color of state law.

**IV. FACTUAL ALLEGATIONS**

11.     Plaintiff retired from CPD in good standing in the spring of 2025 after nearly thirty years of service. On April 30, 2025, Superintendent Snelling signed a credential determination certifying that Plaintiff was in good standing and eligible for retirement credentials. The following day, May 1, 2025, Brown signed a certification under the federal Law Enforcement Officers Safety Act (commonly known as H.R. 218) confirming that Plaintiff separated in good standing for purposes of retired-officer concealed-carry credentials.

12.     On April 30, 2025, the same day he signed the good-standing credential determination, Snelling also signed a memorandum, authored by Brown and dated April 24, 2025, placing Plaintiff on the City's IFR list and classifying his separation as a retirement "in lieu of discharge" for misconduct. The two documents cannot be reconciled. Neither identified any pending

discharge recommendation, separation hearing, or final disciplinary finding that could explain the contradiction.

13. The IFR memorandum represented that two complaint files, Log No. 2023-0005417 and Log No. 2025-0001373, each carried a sustained finding and a recommended fifteen-day suspension.

14. Under CPD's mandatory directives, including the Complaint and Disciplinary System directive, G08-01, and the orders governing Bureau of Internal Affairs ("BIA") investigations, neither cited complaint, Log No. 2023-0005417 nor Log No. 2025-0001373, carried a sustained finding.

15. Log No. 2023-0005417 remained open for 647 days with no investigative activity after the initial complainant interview on December 21, 2023. CPD directives required BIA to complete the investigation within 180 days or to provide written notice of the reasons for the delay and continuing status updates until completion. BIA did neither. Plaintiff was never served with any allegation and was never interviewed. An investigation conducted in that manner could not produce a valid finding under CPD's own rules.

16. Log No. 2025-0001373 was filed on March 23, 2025, two days after Plaintiff's demotion, and alleged conduct from June 1, 2009, nearly sixteen years earlier. CPD directives bar investigation of allegations more than five years old absent written authorization from the Superintendent. No such authorization exists. The complaint was closed without investigation on April 30, 2025, the same day Snelling signed the IFR memorandum.

17. Log No. 2023-0005417 was later closed as unfounded on July 20, 2025. Under CPD's own definitions, an unfounded finding is a determination, by clear and convincing evidence, that the allegation is false or not factual. By then the City had already classified and begun disseminating Plaintiff's separation as a retirement in lieu of discharge.

18. Under the City's controlling IFR policy, an IFR designation required that the separation result from discharge for misconduct; resignation or retirement in lieu of discharge supported by formal charges or formal notice of impending termination; retirement under inquiry where the investigation substantiated serious misconduct; or discovery of serious misconduct during employment. Plaintiff's separation met none of these criteria. No formal charge or notice of impending termination was issued, and neither cited complaint substantiated misconduct.

19. On or about May 27, 2025, DHR entered the "Retirement in Lieu of Discharge" classification in Plaintiff's personnel records and barred him from rehire. The City authored and controlled that classification.

20.     The City published the false classification to third parties by its own conduct: it disseminated the classification to news media, including WTTW and the Chicago Sun-Times, and it produced the false record it had created in response to multiple requests under FOIA.

21.     The City continued to publish the classification after July 20, 2025, when it possessed the unfounded closing report, over a period of approximately eleven months. Each media disclosure and each production of the false record was a separate publication, including publications made within one year before this action was filed.

22.     On September 29, 2025, Plaintiff filed a formal appeal with DHR seeking removal of the designation and an opportunity to clear his name. He submitted the unfounded closing report and his record reflecting no sustained finding.

23.     On November 13, 2025, Blakemore denied the appeal in a letter that gave no reasons and did not address the unfounded report or the invalidity of the underlying complaints.

24.     On April 15, 2026, Blakemore reversed the denial and approved removal of the IFR designation on no new evidence. In the same period, Brown acknowledged in writing that BIA had provided inaccurate information about Plaintiff's disciplinary status from the inception of the IFR process and requested reversal.

25.     Rather than restore Plaintiff to retirement in good standing, consistent with the credential determination and the H.R. 218 certification, the City sought to recode his separation as "Retired Under Inquiry."

26.     Neither cited complaint was pending at retirement, and the City's policies require a written request from BIA to support a "Retired Under Inquiry" coding. No such request exists. Plaintiff's record remains inaccurate.

27.     In August 2025, while Plaintiff was designated ineligible for rehire, the City posted Requisition No. 409747 for twelve Investigator positions, Title Code 1255, assigned to CPD's Bureau of Internal Affairs. The posted minimum qualifications required, among other things, an acceptable disciplinary record. The application window ran from August 21 through September 5, 2025. The IFR designation barred Plaintiff from City rehire and made any application futile. Plaintiff, with nearly thirty years of investigative and command experience and no sustained finding, exceeded every posted qualification.

28.     In February 2026 the City created Requisition No. 417064 for twenty-five positions titled "Investigator-Internal Affairs," Class Code 1235, assigned to CPD's Bureau of Internal Affairs. The City did not post the requisition publicly. It filled the requisition by matching candidates from the Requisition No. 409747 applicant pool, a pool assembled in August and September 2025 while Plaintiff was barred from applying. The City interviewed matched candidates on May

11 and 12, 2026, and hired three investigators on May 27, 2026. Because the City drew exclusively from a pool formed while Plaintiff was excluded, the foreclosure carried forward into those hires even after the IFR designation was removed on April 15, 2026. As of the City's June 2026 records, twenty-two of the twenty-five positions remained unfilled while Plaintiff's record remained miscoded.

29. The bar operated across City departments. In March 2026 the City posted Requisition No. 417112 for an Investigator-Internal Affairs position, Class Code 1235, with the Chicago Fire Department. The application window closed on April 4, 2026, eleven days before the IFR designation was removed, while Plaintiff remained barred from applying.

30. The false classification stigmatized Plaintiff within the law enforcement community and barred him from rehire by the City. By operation of that bar Plaintiff was legally foreclosed from applying for the Bureau of Internal Affairs investigator positions alleged above, positions for which he was qualified. The classification also impaired his ability to pursue other law enforcement adjacent positions requiring a clean record of separation, denied him retirement credentials on his last day of service, withheld his retirement star for nearly eleven months, and caused ongoing emotional distress for which he has sought professional counseling.

## COUNT I
### Against the City of Chicago
### 42 U.S.C. § 1983, Fourteenth Amendment Due Process (Stigma-Plus), Municipal Liability

31. Plaintiff realleges paragraphs 1 through 30 as if fully set forth herein.

32. The Fourteenth Amendment protects against the government's public dissemination of false, stigmatizing information about a person in conjunction with a change in that person's legal status, without due process.

33. The City stigmatized Plaintiff by classifying him, falsely, as having retired in lieu of discharge for misconduct, a classification that imputes serious professional wrongdoing. The City coupled that stigma with a change in Plaintiff's legal status: it placed him on a government do-not-rehire list, altered his official separation status, and by operation of the designation barred him from City rehire, including from applying for the Bureau of Internal Affairs investigator positions alleged above. The false statement and the change in status arose from the same act. This is a change in legal status effected by government action, not merely reputational harm.

34. Due process entitled Plaintiff to a meaningful opportunity to clear his name before or promptly after the stigmatizing classification was disseminated. The City's appeal process before DHR was the only mechanism available. Plaintiff invoked it and was denied any name-clearing process: Blakemore denied his appeal without reasons and without addressing the unfounded report or the invalidity of the underlying complaints.

35.     The City is liable because the deprivation was caused by the act of a final policymaker. Under the City's policies, the Superintendent held final policymaking authority over IFR designations, and Snelling's signature was the final and determinative act placing Plaintiff on the IFR list.

36.     The City is independently liable on a ratification theory. Blakemore, the official with final authority over IFR removal, was presented with the unfounded report and the invalidity of the underlying complaints and nonetheless denied removal, approving the designation and its stated basis.

37.     The City is further liable because it maintained no procedure to verify that BIA-reported findings were final and valid before they were used to impose a permanent stigmatizing classification, and the risk that invalid findings would be used in this way was obvious. That deliberate indifference was a moving force behind Plaintiff's injury.

38.     As a direct and proximate result of the City's conduct, Plaintiff suffered the injuries alleged above.

## COUNT II
### Against Defendant Larry Snelling
### 42 U.S.C. § 1983, Fourteenth Amendment Due Process

39.     Plaintiff realleges paragraphs 1 through 30 as if fully set forth herein.

40.     Snelling signed the IFR memorandum placing Plaintiff on the do-not-rehire list and classifying his separation as in lieu of discharge, on the same day he certified Plaintiff's good standing. As the official with final approval authority over command-level discipline, Snelling knew that no fifteen-day suspension of Plaintiff had ever been submitted to him for approval, because no such suspension existed. Under CPD's disciplinary directives, a suspension of that length can issue only after a completed investigation, a sustained finding, and command channel review. Plaintiff had served as one of roughly fifty Commanders and as a Deputy Chief in a department of about twelve thousand officers, and Snelling had been involved in or aware of Plaintiff's March 21, 2025 demotion, five weeks before he signed, giving him direct and current knowledge of Plaintiff's status. Snelling could not reasonably have credited a sustained finding and suspension said to arise from a complaint filed two days after that demotion and closed without investigation.

41.     Snelling caused the stigmatizing classification to issue and be disseminated without any name-clearing process, took no corrective action after the unfounded report issued, and declined to designate IFR a comparator who had been criminally arrested with an investigation pending while designating Plaintiff, who had no sustained finding. His conduct was objectively

unreasonable and reflected reckless or callous indifference to Plaintiff's clearly established rights, supporting punitive damages.

42.     As a direct and proximate result of Snelling's conduct, Plaintiff suffered the injuries alleged above.

## COUNT III
### Against Defendant Joy A. Brown
### 42 U.S.C. § 1983, Fourteenth Amendment Due Process

43.     Plaintiff realleges paragraphs 1 through 30 as if fully set forth herein.

44.     Brown authored the IFR memorandum stating, falsely, that Plaintiff had sustained findings and recommended suspensions, and submitted it for signature alongside a contradictory good-standing credential determination. The next day she certified Plaintiff's separation in good standing under H.R. 218. As the official responsible for verifying disciplinary information before recommending an IFR designation, Brown was required to confirm that any reported finding was final and valid. She maintained the false classification for approximately eleven months and later admitted in writing that BIA's information was inaccurate from the inception of the process.

45.     Brown's authorship and maintenance of a classification she knew or recklessly disregarded to be false caused Plaintiff's deprivation without due process and reflected reckless or callous indifference to his clearly established rights, supporting punitive damages.

46.     As a direct and proximate result of Brown's conduct, Plaintiff suffered the injuries alleged above.

## COUNT IV
### Against Defendant Sandra Blakemore
### 42 U.S.C. § 1983, Fourteenth Amendment Due Process

47.     Plaintiff realleges paragraphs 1 through 30 as if fully set forth herein.

48.     Blakemore, the official with final authority over IFR removal, denied Plaintiff's appeal without reasons and without addressing the unfounded report or the invalidity of the underlying complaints, thereby denying him any name-clearing process. She reversed that denial months later on no new evidence. The reversal on identical facts shows the denial served no legitimate purpose.

49.     Blakemore's denial of any name-clearing process, and her perpetuation of the stigmatizing classification while in possession of the unfounded report, were objectively unreasonable and reflected reckless or callous indifference to Plaintiff's clearly established rights, supporting punitive damages.

50. As a direct and proximate result of Blakemore's conduct, Plaintiff suffered the injuries alleged above.

## COUNT V
### Against Defendant Larry Snelling
### Defamation Per Se, Illinois Law

51. Plaintiff realleges paragraphs 1 through 30 as if fully set forth herein.

52. By signing and causing the publication of the IFR memorandum and the resulting classification, Snelling published to third parties, including through FOIA responses and news media, the false statement that Plaintiff retired in lieu of discharge for misconduct with sustained findings and recommended suspensions.

53. The statement is defamatory per se because it imputes an inability to perform, and a want of integrity in performing, the duties of Plaintiff's office, and prejudices Plaintiff in his profession. The statement is not reasonably capable of an innocent construction.

54. The statement was false, and Snelling published it with knowledge of its falsity or reckless disregard for its truth, as alleged above. Any conditional privilege is defeated by that abuse, and no statutory immunity extends to knowing or reckless falsehood.

55. As a direct and proximate result of Snelling's publication, Plaintiff has been injured in his reputation and profession. Damages are presumed, and Plaintiff need not prove special damages.

## COUNT VI
### Against Defendant Joy A. Brown
### Defamation Per Se, Illinois Law

56. Plaintiff realleges paragraphs 1 through 30 as if fully set forth herein.

57. Brown authored the false statement that Plaintiff retired in lieu of discharge for misconduct with sustained findings and recommended suspensions, and caused that statement to be published to third parties, including through FOIA responses and news media.

58. The statement is defamatory per se because it imputes an inability to perform, and a want of integrity in performing, the duties of Plaintiff's office, and prejudices Plaintiff in his profession. The statement is not reasonably capable of an innocent construction.

59. Brown published the statement with knowledge of its falsity or reckless disregard for its truth. She was responsible for verifying disciplinary information before recommending an IFR designation, maintained the classification for approximately eleven months, and later admitted in writing that the information was inaccurate from the inception of the process. Any conditional

privilege is defeated by that abuse, and no statutory immunity extends to knowing or reckless falsehood.

60.     As a direct and proximate result of Brown's publication, Plaintiff has been injured in his reputation and profession. Damages are presumed, and Plaintiff need not prove special damages.

## COUNT VII
### Against Defendant Sandra Blakemore
### Defamation Per Se, Illinois Law

61.     Plaintiff realleges paragraphs 1 through 30 as if fully set forth herein.

62.     While in possession of the unfounded closing report, Blakemore denied Plaintiff's appeal and thereby authorized and perpetuated the continued publication of the false classification to third parties, including through FOIA responses and news media, after July 20, 2025.

63.     The statement is defamatory per se because it imputes an inability to perform, and a want of integrity in performing, the duties of Plaintiff's office, and prejudices Plaintiff in his profession. The statement is not reasonably capable of an innocent construction.

64.     Blakemore perpetuated the publication with knowledge of its falsity or reckless disregard for its truth, as shown by her denial without reasons while holding the unfounded report and her later reversal on no new evidence. Any conditional privilege is defeated by that abuse, and no statutory immunity extends to knowing or reckless falsehood.

65.     As a direct and proximate result of Blakemore's perpetuation of the publication, Plaintiff has been injured in his reputation and profession. Damages are presumed, and Plaintiff need not prove special damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Michael J. Barz respectfully requests that this Court:

A.     Enter judgment in Plaintiff's favor on all counts;

B.     Award compensatory damages against Defendants in amounts to be determined at trial;

C.     Award punitive damages against Defendants Snelling, Brown, and Blakemore on Counts II, III, and IV pursuant to 42 U.S.C. § 1983;

D.     Declare that the IFR designation and the classification of Plaintiff's separation as a retirement in lieu of discharge violated the Fourteenth Amendment;

E.  Order the City of Chicago to correct Plaintiff's personnel records to reflect retirement in good standing, and to remove any "Retirement in Lieu of Discharge" or "Retired Under Inquiry" coding;

F.  Enjoin the City of Chicago from producing or disseminating the false IFR memorandum, or any coding derived from it, in response to future FOIA requests or otherwise;

G.  Award reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988;

H.  Award pre- and post-judgment interest; and

I.  Grant such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

Dated: July 27, 2026

Respectfully submitted,

/s/ Michael Malatesta
Michael Malatesta
Malatesta Law Offices, LLC
5310 N. Harlem, Suite 203
Chicago, IL 60656
(312) 445-0514
mike@malatestalaw.com

/s/ John Garrido
John Garrido
Law Offices of Garrido & Stoppa, P.C.
5310 N. Harlem, Suite 210
Chicago, IL 60656
(773) 594-2870 | Fax (773) 594-2871
nwlegal@sbcglobal.net
ARDC No. 6288166

*Counsel for Plaintiff Michael J. Barz*